Nathaniel T. Helman, J.
This is a consolidated application pursuant to article 78 of the CPLR. The petitioners are tenants and landlord of a housing project constructed and operated pursuant to article 2 of the Private Housing Finance Law (limited-profit housing companies). The tenant petitioners seek to review and annul a determination of the respondent, Commissioner of Housing and Community Renewal of the State of New York, which granted an increase in rents. The landlord as petitioner seeks a review and modification of the order granting the increase insofar as it provided that such increase be applied on two dates, 50% on April 1, 1965 and the balance on April 1, 1966 with further provision for a modification if a further tax exemption is granted.
The Legislature in article 2 of the Private Housing Finance Law provided criteria from which the commission might properly make determination of the issues brought before them under the various provisions of the statute. Thus, under subdivision 13 of section 13 a company organized under the statute served a “ public purpose ” and was subject to supervision and control of the Commissioner. Loans were to be made by the State only *650 where estimated revenues of the project were sufficient to cover all probable costs of operation and maintenance (§ 26, subd. 1, par. [b]). Rentals were to be measured by the maximum average rentals determined by the Commissioner, and he was authorized to vary such rentals to secure sufficient income for the company to meet all of its necessary obligations (§ 31).
The landlord in September of 1964 filed an application for an increase on the ground that the income from the project was insufficient to meet its requirement. Schedules were attached to the application and provision was made to supply each tenant with copies thereof. Although not mandated by law, a long and complete public hearing was had, after which the respondent issued the order now being reviewed.
Taking up first the petition of the landlord, it is his contention that the order is improper on its face since the respondent gave no consideration to the landlord’s application for further tax exemption. In ordering that 50% of the rent increase be postponed to April 1, 1966, the Commissioner noted that landlord had made an application for an increase in tax exemption but that no present weight could be given to it, his position being that if the request of the housing company for such exemption were subsequently granted, an appropriate application for modification could then be made.
The court is of the opinion that there is no merit to landlord’s contentions, nor to the claim of the landlord that there is no basis in law for the postponement of a portion of the rent increase. The law contemplates that the rentals may vary (Private Housing Finance Law, § 31, subd. 1, par. [a]) and that there may be a deficiency in the payment to landlords which would be made up in a subsequent year (§ 28). The respondent examined all the factors and made a thorough and complete accounting and analysis of the costs and projected costs. He arrived at the figure necessary to enable the landlord to maintain the building and comply with the act. Recognizing that an application by this landlord for an increase in the tax. abatement from 40% to 50% might be acted upon favorably, the Commissioner held that an application to modify the second step increase of $1.70 per room in 1966 would be appropriate. He added, however, that summary disposition could not be presently made since additional factors might be presented: (1) an estimated $.08 real estate tax increase, (2) the depletion of the 3% contingency fund because of necessary repairs to the incinerator, as well as (3) other extraordinary expenses. It was a proper exercise of his discretion to have the increase in two steps to lessen the impact on the tenants. The fact that the power to *651 do so is not specifically provided for in the act does not bar such action. The Commissioner is given broad powers in the present emergency situation to protect landlords and tenants, to the extent that private capital will be encouraged to invest in the construction of housing facilities. His action here indicates that the landlord might be delayed in obtaining his 6% return, but will not be deprived of it. Nor has the landlord shown that the two-step increase is against the declared policy of the State. The policy is to encourage private buildings by protecting the investor. The public interest requires that the housing built under the provisions of article 2 be administered in a manner to attract builders through low-cost public loans and tax abatements to provide housing at the lowest practical rental to low-income families, and if a slight delay in payment occurs, the investment is still fully protected. In any event, the investors are aware that there may be variation in rents and expenses which will curtail the regular payment of interest on the investment, but which will never deprive them of their 6% return. This involves a balancing process between the builders, the tenants, and the State.
With respect to the tenants’ petition, they argue that the rent increase provision in their leases is void because at the time of its execution they were in an unequal bargaining position; that public policy dictates that the amount of the rental should not be varied until the lease expires; that they are being denied due process and equal protection.of the law; that the respondent Commissioner was prejudiced, that the delegation of authority by the Legislature to the respondent without standards or guides is unconstitutional, and that the lack of diligence of landlord in seeking to obtain tax abatement rendered the granting of the increase arbitrary and capricious. The court finds no merit to these contentions and some are without legal basis. The first argument has been characterized by the respondent 1 ‘ as somewhat bewildering and simply impossible to fathom.” The tenants were in the same situation as any other tenants executing a lease. It was clearly provided that the rent could be raised under certain conditions, but only with the approval of the respondent. Thousands of apartments in our city are occupied by tenants who have signed leases under conditions of stringency based on a housing shortage, yet the obligations undertaken lose none of their force.
If the tenants are correct in their second argument, that public policy prohibits a variance of the lease before its expiration (a proposition which has no legal basis), the purposes of the act would be defeated. The private investors would not be *652 assured of the return on their investment and would not be attracted to this well-planned method of furthering building construction. Here again, there was no misapprehension by the tenants. It was clearly provided that the rental could be increased during the term, if such was necessary. In any event, they are adequately protected as the landlord, under no circumstances, can derive more than a 6% return.
The third argument, based on the comparison between themselves and tenants in “ limited dividend housing projects ” (Private Housing Finance Law, art. 4), can be best answered by stating the latter classification comes under the provisions of a different housing program, under which housing is constructed pursuant to a plan of capitalization which involves private financing obtained by the builder, while in the limited profit housing program, financing is provided by the State directly or through its housing finance agency. Also, insofar as the right to a hearing is concerned, it is clear that a complete hearing was granted them. Reports were filed by division personnel having direct knowledge of the operation, and testimony was taken of witnesses who could contribute to the resolution of the financial factors involved. “ The Legislature does not provide for a hearing procedure * * * Under such circumstances, there is no statutory or implied requirement for a hearing * * * In arriving at a determination * * * the commission may seek and rely upon any facts that exist, regardless of their source so long as they are reliable and trustworthy.” (Matter of Fink v. Cole, 1 N Y 2d 48, 51-52.)
Next, they have failed to sustain the charge that the respondent was in any way prejudiced, or that he had prejudged the application prior to the hearing.
The contention that sufficient standards and principles are not enunciated in the act to provide for the carrying out of the program is likewise without merit. That the “ limited dividend ” housing statutes make specific reference to the necessity for reasonable economies, does not mean that the statutes applicable to the present tenancies do not authorize similar procedures, if not by specific provision, certainly by implication and accepted practice. An examination of the rules and regulations provided by the Division of Housing reveals the bookkeeping and accounting practices employed by the commission, and the affidavits of the respondent establish their use in this case.
Finally, the tax abatement matter has been considered by the respondent and if such is secured by the landlord, it has been *653 indicated by the Commissioner that relief will be afforded to the tenants.
Therefore, as there is warrant in the record for the determination of the respondent, and a rational basis for his order, the applications of landlord and tenants are both denied and the petitions dismissed.